Brian J. Jacobs (State Bar No. 107788)
1401 Ambassador Street
Suite 102
Los Angeles, California 90035
(310) 770-6874 (telephone)
(310) 858-6489 (facsimile)
<brianjacobs21@yahoo.com> (email)

Attorney for Plaintiff
Robert Kuna

FILED
2008 JUN -9 PM 3: 53
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

ROBERT KUNA,

    Plaintiff,

v.

JOSEPH SHALANT, A LAW
CORPORATION, a California
professional law corporation; JOSEPH
L. SHALANT; RONALD A. CHER;
BRIAN A. YAPKO; DARREN A.
MANIBOG; G. MONTY MANIBOG;
MANIBOG & MANIBOG LLP, a
California professional limited liability
partnership; MARK BERMAN,
M.D.; CRAIG JAMES BALL, M.D.;
JOHN F. REINISCH, M.D.;
CHILDRENS HOSPITAL LOS
ANGELES, a California corporation;
CAMDEN SURGERY CENTER OF
BEVERLY HILLS, INC., a
California corporation; and LESLYN
FLOWERS,

    Defendants.

Case No. CV08-03782 JSL (SSx)

COMPLAINT FOR DAMAGES FOR:

(1) BREACH OF WRITTEN CONTRACT
(2) FRAUD (SUPPRESSION OF FACTS)
(3) FRAUD (SUPPRESSION OF FACTS)
(4) CONSPIRACY TO INTERFERE WITH CONTRACT
(5) CONSPIRACY TO DEFRAUD
(6) FRAUD (INTENTIONAL MISREPRESENTATION)
(7) FRAUD (NEGLIGENT MISREPRESENTATION)
(8) INTERFERENCE WITH ECONOMIC ADVANTAGE
(9) FRAUD (INTENTIONAL MISREPRESENTATION)
(10) INVASION OF CONSTITUTIONAL RIGHT TO PRIVACY
(11) VIOLATION OF CONFIDENTIALITY OF MEDICAL INFORMATION ACT
(12) CONVERSION
(13) CONVERSION
(14) CONVERSION

Plaintiff Robert Kuna ("Plaintiff") alleges:

## JURISDICTION AND VENUE

1.    This Court has original jurisdiction under 28 U.S.C. §1332, in that Plaintiff is a foreign resident with multiple foreign residences, and each of the defendants herein are residents of the State of California.  The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars.

2.    Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.    Plaintiff is a foreign resident with multiple foreign residences.

4.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendant Joseph Shalant, A Law Corporation (the "Corporation"), was a professional law corporation organized and existing under the laws of the State of California, duly registered with the State Bar of California as a law corporation, with its principal place of business at 3699 Wilshire Boulevard, Suite 1290, Los Angeles, California 90010.

5.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned until May 21, 2005, defendant Joseph L. Shalant ("Shalant") was an attorney at law duly licensed to practice by the State Bar of California, at which latter date Shalant became ineligible to practice law, and who was disbarred on January 13, 2006; that he was the agent and employee of the Corporation and in doing the things herein alleged was acting within the scope of such agency; and that with respect to all matters herein alleged was a partner by estoppel of defendants Ronald A. Cher, Brian A. Yapko and Darren A. Manibog.

6.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendant Ronald A. Cher ("Cher") was an attorney at

1  law duly licensed to practice by the State Bar of California; that he was the
2  agent and employee of the Corporation and in doing the things herein alleged
3  was acting within the scope of such agency; and that with respect to all matters
4  alleged herein was a partner by estoppel of defendants Shalant, Brian A. Yapko
5  and Darren A. Manibog.

6      7.    Plaintiff is informed and believes, and thereon alleges, that at all
7  times herein mentioned, defendant Brian A. Yapko ("Yapko") was an attorney
8  at law duly licensed to practice by the State Bar of California; that he was the
9  agent and employee of the Corporation and in doing the things herein alleged
10  was acting within the scope of such agency; and that with respect to all matters
11  alleged herein was a partner by estoppel of defendants Shalant, Cher and
12  Darren A. Manibog.

13      8.    Plaintiff is informed and believes, and thereon alleges, that at all
14  times herein mentioned, defendant Darren A. Manibog ("Manibog") was an
15  attorney at law duly licensed to practice by the State Bar of California; that he
16  was the agent and employee of the Corporation and in doing the things herein
17  alleged was acting within the scope of such agency; and that with respect to all
18  matters alleged herein was a partner by estoppel of defendants Shalant, Cher
19  and Yapko.  The Corporation, Shalant, Cher, Yapko and Manibog will
20  hereinafter be collectively referred to as the "Attorneys."

21      9.    Plaintiff is informed and believes, and thereon alleges, that at all
22  times herein mentioned, defendant G. Monty Manibog ("Monty Manibog") was
23  an attorney at law duly licensed to practice by the State Bar of California, with
24  his principal place of business at 3699 Wilshire Boulevard, Suite 1290, Los
25  Angeles, California 90010.  Plaintiff is further informed and believes, and
26  thereon alleges, that defendant Manibog & Manibog LLP ("Manibog &
27  Manibog") is a California professional limited liability partnership of which
28  Manibog and Monty Manibog are partners, with its principal place of business

1   at 3699 Wilshire Boulevard, Suite 1290, Los Angeles, California 90010.

2       10.   Plaintiff is informed and believes, and thereon alleges, that at all

3 times herein mentioned, defendant Mark Berman, M.D. ("Berman") was duly

4 licensed to practice as a physician and surgeon by the California State Medical

5 Board and was an individual residing in the County of Los Angeles, State of

6 California.

7       11.   Plaintiff is informed and believes, and thereon alleges, that at all

8 times herein mentioned, defendant Craig James Ball, M.D. ("Ball") was duly

9 licensed to practice as a physician and surgeon by the California State Medical

10 Board and was an individual residing in the County of Riverside, State of

11 California.  Plaintiff is informed and believes, and thereon alleges, that Berman

12 and Ball conducted business under the name "Cosmetic Surgery Institute of

13 Palm Desert," and that with respect to all matters alleged herein, Ball was a

14 partner of Berman.  Ball subsequently had his license to practice medicine

15 revoked by the California Medical Board.

16       12.   Plaintiff is informed and believes, and thereon alleges, that at all

17 times herein mentioned, defendant John F. Reinisch, M.D. ("Reinisch") was

18 duly licensed to practice as a physician and surgeon by the California State

19 Medical Board and was an individual residing in the County of Los Angeles,

20 State of California.

21       13.   Plaintiff is informed and believes, and thereon alleges, that

22 defendant Childrens Hospital Los Angeles ("Hospital") is now, and at all times

23 herein mentioned was, a corporation duly organized and existing under the laws

24 of the State of California, having its principal place of business in the City of

25 Los Angeles, State of California.  Reinisch is employed by the Hospital.

26       14.   Plaintiff is informed and believes, and thereon alleges, that

27 defendant Camden Surgery Center of Beverly Hills, Inc. ("Camden Surgery

28 Center") is now, and at all times herein mentioned was, a corporation duly

1   organized and existing under the laws of the State of California, having its

2   principal place of business in the City of Beverly Hills, State of California.

3       15.   Plaintiff is informed and believes, and thereon alleges, that

4   defendant Leslyn Flowers ("Flowers") is now, and at all times herein

5   mentioned was, an individual residing in the County of Los Angeles, State of

6   California.  Plaintiff is informed and believes, and thereon alleges, that during

7   the times mentioned herein, Flowers was initially an employee of the

8   Corporation and Shalant, and that at the time Plaintiff returned to the United

9   States as more fully alleged in paragraph 25 hereof, Flowers was an employee

10  of Yapko.

11      16.   Unless the context otherwise requires, the Attorneys, Monty

12  Manibog, Manibog & Manibog, Berman, Ball, Reinisch, the Hospital, Camden

13  Surgery Center and Flowers will be referred to collectively as "Defendants"

14  and individually as a "Defendant."

15  ## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16      17.   On or about April 15, 2004, at Los Angeles, California, Plaintiff

17  and the Attorneys entered into that certain Medical Malpractice Contingency

18  Retainer Agreement (the "Retainer Agreement"), a true and correct copy of

19  which is annexed hereto as Exhibit "A" and is incorporated herein by this

20  reference.  Plaintiff is informed and believes, and thereon alleges, that the

21  Attorneys are a partnership of attorneys and counselors at law, including one

22  professional corporation.

23      18.   Plaintiff thereby retained and employed the Attorneys to represent

24  Plaintiff as Plaintiff's attorney at law for the purpose of filing and prosecuting a

25  claim for damages against Berman for medical malpractice, fraud and battery

26  (lack of informed consent) in connection with procedures performed, or

27  represented to have been performed, by Berman on May 19, 2003; August 18,

28  2003; and January 12, 2004.  In a declaration dated January 22, 2008, Cher

1  claims to have said to Plaintiff in a letter dated May 14, 2004, "Based on what
2  I have seen and heard so far, you have tenable claims for medical malpractice,
3  fraud, and lack of informed consent."

4      19.    At such time and place Defendants accepted such employment and
5  agreed to perform such services for Plaintiff.

6      20.    At this time, the named principal among the Attorneys, Shalant,
7  was the subject of a disciplinary proceeding before the State Bar of California,
8  case no. 01-O-04627-AIN, in which, on September 30, 2003, the State Bar
9  Court recommended two years' immediate suspension and four years'
10 probation, among other discipline.  Plaintiff was concerned that this proceeding
11 might impair the Attorneys' ability to prosecute his case against Berman.

12     21.    In response, Cher advised Plaintiff that Shalant had in fact been
13 suspended from the practice of law; that the other Attorneys, namely, Cher,
14 Yapko and Manibog, were in fact Plaintiff's lawyers; that Shalant's only
15 participation in the Attorneys' cases was in conducting examinations at trial;
16 that Cher had tried cases in the past, and could do so in the future; and that
17 Shalant was in fact suspended, and was appealing the State Bar Court's decision
18 to the California Supreme Court (which ultimately disbarred Shalant on January
19 13, 2006, based on repeated acts of moral turpitude).  Cher then took Plaintiff
20 to Yapko's office and introduced Yapko to Plaintiff as the Attorney responsible
21 for legal research.  Both reassured Plaintiff that they had contingency plans in
22 the event Shalant could not practice.

23     22.    Cher thereafter telephoned Plaintiff and suggested that he meet with
24 Reinisch and requested that Reinisch open and "look at" Plaintiff's masses and
25 objects in his abdomen and face.  Cher also asked that Plaintiff get MRI images
26 of his surgical wounds, scars, masses and objects.  Plaintiff then met with
27 Reinisch at his office at Defendant Hospital.  In sworn testimony given on May
28 14, 2008, Shalant testified concerning Reinisch, "[I] knew him well . . . . I've

1 | been to his house.  We have had good discussions on cases."  Without

2 | Plaintiff's knowledge or consent, the Attorneys had secretly instructed Reinisch,

3 | in violation of the Business & Professions Code, not to make any

4 | contemporaneous notes or records of his examination of Plaintiff.

5 |     23.    At the evaluation, Reinisch expressed to Plaintiff the opinion that

6 | Berman had, indeed, committed medical malpractice and other harms in respect

7 | of Plaintiff, specifically, but not limited to, Berman's negligent failure to treat

8 | Plaintiff's chronic acute pain.  Based on this chronic pain Plaintiff was then

9 | experiencing, Reinisch recommended that Plaintiff schedule corrective surgery

10 | with him.  Plaintiff paid Reinisch $500.00 for the evaluation.

11 |     24.    Plaintiff in fact had scheduled corrective surgery with Steven R.

12 | Cohen, M.D. ("Dr. Cohen") whose contemporaneous records and opinion

13 | favored Plaintiff's claim.  Dr. Cohen stated in his report, "I have indicated to

14 | him [Plaintiff] that I would prefer to work through an attorney . . . ."  Dr.

15 | Cohen had quoted Plaintiff a price of $4,476.00 for this corrective surgery.

16 | Dr. Cohen thereafter called Plaintiff and said that Reinisch had telephoned him

17 | and had encouraged him to allow Reinisch to perform the surgery.  This call by

18 | Reinisch was made without Plaintiff's knowledge or consent.  Dr. Cohen

19 | believed that it was in Plaintiff's best interest to have the corrective surgery

20 | performed by Reinisch, because Reinisch had served as an expert witness

21 | against Berman in the past in actions brought by the Attorneys which had been

22 | successful.  Dr. Cohen further suggested that since the trial would occur in Los

23 | Angeles, it was better for Plaintiff to undergo the corrective surgery under

24 | Reinisch.  Plaintiff in good faith cooperated and on June 1, 2004, Reinisch

25 | performed the surgery at Defendant Camden Surgery Center, which surgery

26 | provided evidence of two batteries and other medical malpractice, specifically,

27 | two foreign objects placed into Plaintiff's body without his knowledge or

28 | consent, one of which was in fact responsible for Plaintiff's chronic acute pain